**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Richard Labine,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-19-04528-PHX-JZB<br><br>**ORDER** |

At issue is the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 19, "Pl. Br."), the Commissioner's Response (Doc. 22, "Def. Br."), Plaintiff's Reply (Doc. 26, "Reply"), and the Administrative Record (Doc. 13, "R."). For the following reasons, the decision is affirmed.

**I.    Background.**

Plaintiff filed his application on August 18, 2015, alleging disability as of January 10, 2015 due to symptoms associated with anxiety, depression, and post-traumatic stress disorder ("PTSD"). (R. at 17, 22.) Following denial of the application at the initial and reconsideration levels, a hearing was held before an administrative law judge ("ALJ") on March 13, 2018. (*Id.* at 17, 33–42.) On June 20, 2018, the ALJ issued a written decision

finding Plaintiff not disabled. (*Id.* at 17–26.) Therein, the ALJ found Plaintiff had "severe"[1] impairments of anxiety, depression, and PTSD. (*Id.* at 19.) Despite these impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform work "with minimal social demands where interaction with others is superficial and occasional" and "in an environmental where [he] is not expected to resolve conflicts or persuade other[s] to follow demands." (*Id.* at 21.) Applying the framework of section 204.00 of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ found that Plaintiff was not disabled because he "retain[ed] the capacity to meet the mental demands of unskilled work[, which] generally requires the performance of only simple, routine, repetitive tasks [and] dealing with objects, rather than with data or people." (*Id.* at 25–26.) Afterward, the Appeals Council denied review and the ALJ's decision became final. (*Id.* at 1–3.)

## II.    Legal Standard.

In reviewing a decision of the Commissioner, the Court only reviews issues raised by the party challenging the decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). The Court may affirm, modify, or reverse the decision, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation,

---

[1]    An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

[2]    "[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

the ALJ's decision should be upheld." *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d. at 675. "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* "Although the Court may not affirm the ALJ's decision based on grounds not set forth in the ALJ's opinion, the Court can consider evidence not specifically mentioned in the opinion if it was available to the ALJ and supports the ALJ's stated grounds for [the] decision." *Lopez v. Colvin*, 194 F. Supp. 3d 903, 910 n.1 (D. Ariz. 2016) (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006)). "Even when the ALJ commits legal error, [the Court] uphold[s] the decision where that error is harmless." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citations and internal quotation marks omitted).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis. 20 C.F.R. § 404.1520(a). The burden of proof is on the claimant for the first four steps but shifts to the ALJ at step five. *Ford v. Saul*, 950 F.3d 1141, 1148–49 (9th Cir. 2020). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1149 (citation and internal quotation marks omitted). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically

determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii).If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to step five and determines whether the claimant can perform other work existing in significant numbers in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III. Analysis.**

    **A. Plaintiff's Allegations.**

Plaintiff argues that the ALJ erred in rejecting his symptom testimony. (Pl. Br. at 19–24.) As noted by the ALJ, Plaintiff testified that at his last job he would snap at employees and yell at customers which led to his dismissal. (R. at 22, 34–35.) He testified that he has nightmares and does not sleep well. (*Id.* at 22, 35–36.) His depression was worsened by the passing of his wife, and he cries 4-5 times per week. (*Id.* at 22, 37–38.) He gets anxious when in crowded places, around other people, watching the news, and hearing a helicopter. (*Id.* at 22, 39–40.) The ALJ found that while Plaintiff's allegations indicated the existence of some limitations, the alleged severity of those limitations was "not consistent with the medical evidence and other evidence in the record," which did "not support a finding that [Plaintiff] is precluded from performing all work[-]related activity." (*Id.* at 22.)

In assessing a claimant's RFC, the ALJ considers a claimant's subjective allegations and first "determine[s] the extent to which [any] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the] symptoms

affect [the claimant's] ability to work." 20 C.F.R. § 404.1529(a); *see* 20 C.F.R. § 404.1529(c)(2).[3] Absent a finding of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting a claimant's allegations. *Treichler*, 775 F.3d at 1102. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099.

In discounting Plaintiff's subjective allegations, the ALJ found that his "mental impairments ha[d] been effectively treated by counseling and medication." (*Id.* at 23.) In particular, the ALJ noted that Plaintiff had "a good response to medication" and that "his medications were 'working well'" to alleviate his symptoms. (*Id.* at 23.)[4] Additionally, the ALJ noted that Plaintiff's major depressive disorder was in "partial" remission in November 2015. (*Id.* at 23 (citing *id.* at 271).) His major depressive disorder was in "full" or "complete" remission in August 2016 and onward. (*Id.* at 391, 423, 508, 535.) In November 2017, as noted by the ALJ, Plaintiff decided to forego future psychological treatment as he felt it was no longer necessary and his medications were beneficial. (*Id.* at

---

[3] The Court rejects Plaintiff's argument that the ALJ was not permitted to consider the degree of support his allegations had from objective medical evidence (Pl. Br. at 20), as the regulations specifically direct the ALJ to consider such. *See* 20 C.F.R. §§ 404.1529(a), (c)(2). *See also Lingenfelter*, 504 F.3d at 1040 (stating that an ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

[4] *See, e.g.*, R. at 269 ("[Plaintiff] reported he is able to manage his anxiety for the most part and his medications seem to be working well at this time."; "[Plaintiff] indicated his medications are working well and he wanted Dr. Downs to be aware."), 357 ("He is doing very stable [sic] with the medications he has at the present time."), 360–61 ("He thinks that at the present time he does not need to continue psychological treatment. He is doing well with the Clonazepam and the Buspar, Trazodone and Venlafazine."), 364 ("Mood controlled with current meds. Able to sell his house in the west valley which has relieved a lot of his stress.").

360–61 ["He thinks that at the present time he does not need to continue psychological treatment. He is doing well with the Clonazepam and the Buspar, Trazodone and Venlafazine."].) The ALJ concluded that Plaintiff's "mental symptoms [were] controlled with routine and conservative treatment and medication." (*Id.* at 23.)

The ALJ's reasons for discounting Plaintiff's allegations are specific, clear, convincing, and supported by substantial evidence. The reported and demonstrated effectiveness of medications in controlling Plaintiff's symptoms was a valid basis to discount his allegations. *Warre*, 439 F.3d at 1006 ("Impairments that can be controlled effectively with medication are not disabling."); *Lopez*, 194 F. Supp. 3d at 910 (same). Similarly, the fact that Plaintiff's symptoms were adequately controlled with "routine and conservative treatment" was also a valid basis for discounting his allegations. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) ("[A] response to conservative treatment undermines [a claimant's] reports regarding the disabling nature of his [symptoms].").[5] And finally, Plaintiff's decision to not pursue further psychological treatment was yet another valid basis to find his symptoms were not as severe as alleged. *See* 20 C.F.R. § 404.1529(c)(3)(v) (stating that the treatment a claimant undergoes is a relevant factor); *Tommasetti*, 533 F.3d at 1039 ("The ALJ may consider . . . unexplained or inadequately explained failure to seek treatment . . . ."). Therefore, the discount of Plaintiff's subjective allegations for these reasons was proper.

Given the validity of the above reasons, the Court need not determine the validity of any other articulated reasons for discounting Plaintiff's allegations, *e.g.*, inconsistency with activities of daily living.[6] Even if the Court were to find one or more of these

---

[5] The Court notes that in the context of mental health, symptoms may "wax and wane," as noted by Plaintiff (Pl. Br. at 21–22) and the Court of Appeals, *see Garrison*, 759 F.3d at 1017. However, the record before the Court demonstrates a consistent upward trend toward improvement, rather than "sporadic" improvement (*id.* at 22) or "waxing and waning" of symptoms throughout the relevant period.

[6] The ALJ noted that Plaintiff reported being "okay with crowds when he does not feel closed in" and "'bowling and walking' to decrease stress." (R. at 22–23, 270, 273.) Plaintiff also reported enjoying a meal at Olive Garden in celebration of Veterans' Day and

remaining reasons invalid, it would not change the outcome of the case. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding ALJ's reliance on an invalid reason to discredit claimant was "harmless error" where ALJ had also relied on other reasons that were valid); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008) (same).

### B. Medical Opinions.

Next, Plaintiff argues that the ALJ erred by rejecting the opinion of his treating psychiatrist, Dr. David Downs. (Pl. Br. at 11–19.) The ALJ assigned "little weight" to Dr. Downs's opinion of various disabling limitations (R. at 346–49), finding that it "rel[ied] heavily on the subjective report of symptoms and limitations provided by [Plaintiff]," which "the totality of the evidence" did not support. (*Id.* at 24.)

In assessing a claimant's RFC, the ALJ considers "all of the relevant medical and other evidence," including medical opinion evidence. 20 C.F.R. § 404.1545(a)(3); *see* 20 C.F.R. § 404.1527. "[P]hysicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability–the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In general, medical opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Id.* "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined

---

was "looking forward" to going on a cruise in February 2017. (*Id.* at 273, 529.)

the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. §§ 404.1527(c)(1)–(6); *Trevizo*, 871 F.3d at 675.

The ALJ's reason for assigning "little" weight to Dr. Downs's opinion was specific, legitimate, and supported by substantial evidence. *See Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (internal citation omitted). Plaintiff's arguments to the contrary are unavailing. First, Plaintiff argues that the opinion could not be rejected simply because it was based on self-reports. (Pl. Br. at 12–15.) However, the opinion was not rejected simply because it was based on self-reports but because it was based on self-reports *that were not supported by "the totality of the evidence."*[7] Plaintiff then faults the ALJ for not juxtaposing citations to specific evidence with this particular finding. (*Id.* at 15–16.) However, preceding the analysis of Dr. Downs's opinion is the ALJ's analysis of Plaintiff's subjective reports containing citations to the contradictory evidence. (R. at 22–24.) The Court reads the ALJ's decision as a whole, and not just one sentence of it in a vacuum. Thus, based on the ALJ's earlier analysis of Plaintiff's subjective allegations, the Court can "reasonably discern" what evidence the ALJ is referring to when stating that "the totality of the evidence" did not support Plaintiff's subjective complaints in the context of the analysis of Dr. Downs's opinion. The ALJ therefore fulfilled his duty of "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Garrison*,

---

[7] Substantial evidence supports the ALJ's finding that Dr. Downs's opinion, indeed, relied heavily on Plaintiff's self-reports. To wit, on the day that Plaintiff brought the form for Dr. Downs to fill out, Dr. Downs noted, "I discussed [Plaintiff's] response and feelings about each question on the form that he brought me. I completed and signed it." (R. at 507.) In addition, Dr. Downs noted Plaintiff reported that day: "I just can't work with people or be around too many people without getting really uncomfortable or even angry. I lose my focus if I go too long trying to deal with others and remember what it [sic] I'm supposed to do." (*Id.* at 506.)

759 F.3d at 1012. Any error based on a failure to cite evidence twice is harmless. *See Treichler*, 775 F.3d at 1099 ("An error is harmless 'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity.'") (quoting *Alaska Dep't of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004)). Lastly, Plaintiff argues that the ALJ impermissibly relied on his own "opinion" of the evidence in rejecting Dr. Downs's opinion. (Pl. Br. at 15.) This argument is without merit as the Commissioner's regulations specifically direct the ALJ to "assess [a claimant's] residual functional capacity based on all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), and to evaluate medical opinion evidence according to certain factors, which include the degree of support the opinion has from objective medical evidence, *id.* § 404.1527(c)(3), as well as its consistency with the record as a whole, *id.* § 404.1527(c)(4). The discharge of these regulatory duties is not tantamount to rendering a medical opinion. *See Landeros Zamora v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05119-PHX-DLR, 2020 WL 5810060, at *5 n.8 (D. Ariz. Sept. 30, 2020) (rejecting the same argument); *Schott v. Comm'r of Soc. Sec. Admin.*, No. CV-19-00389-PHX-JJT, 2019 WL 5782324, at *5 (D. Ariz. Nov. 6, 2019) (same). In sum, because Dr. Downs's opinion was based "to a large extent" on Plaintiff's subjective allegations that were properly discounted, the rejection of Dr. Downs's opinion was proper. *Tommasetti*, 533 F.3d at 1041.

Plaintiff further argues that the ALJ erred by assigning "great" weight to Dr. Paula Kresser, Ph.D., the non-examining psychologist who reviewed his application at the reconsideration level. (Pl. Br. at 16–19; *see* R. at 75–76.) Dr. Kresser opined that Plaintiff had "moderate" limitation in interacting with others, but no limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; or adapting or managing oneself. (R. at 75.) She noted that Plaintiff was independent in his activities of daily living, attended counseling, and benefited from medication, but noted that he had difficulty being around people, anxiety attacks, and flashbacks. (*Id.*) The ALJ found that her opinion was "consistent with the persuasive objective evidence and [Plaintiff's] activities of daily living." (*Id.* at 25.) Because Dr. Kresser's opinion was

consistent with other evidence in the record, it constituted substantial evidence supportive of the ALJ's nondisability determination.[8] *See Thomas*, 278 F.3d at 957; *see also* 20 C.F.R. § 404.1527(c)(4) (permitting *the ALJ* to consider an opinion's consistency with the record as a whole). Further, contrary to Plaintiff's assertion, the ALJ provided explanation "for departing from the differing legal standards for evaluation of opinions from treating versus nontreating medical sources." (*See* Pl. Br. at 17.) To wit, the ALJ provided a specific and legitimate reason supported by substantial evidence for not according greater weight to Dr. Downs. Plaintiff's assertion is therefore without merit. Accordingly, the Court finds no error in the ALJ's evaluation of the medical opinion evidence.

### C. Application of the Medical-Vocational Guidelines.

Lastly, Plaintiff argues that the ALJ improperly relied on the Medical-Vocational Guidelines ("Grids") at step five in finding him not disabled, arguing that "the [G]rids are limited to evaluating exertional limitations and the ALJ found that [he] did not have any exertional limitations." (Pl. Br. at 24–27; *see* R. at 25–26.)

At step five, the ALJ determines whether a claimant can perform other work existing in significant numbers in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). "There are two ways for the Commissioner to meet his Step Five burden: (1) the testimony of a VE; or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "At step five a vocational expert's testimony is required when a non-exertional limitation is 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (internal citation omitted).

First, Plaintiff argues that his limitations are "sufficiently severe" at step five because the ALJ found his mental impairments were severe at step two. (Pl. Br. at 25–26.) However, this argument has been squarely rejected by the Court of Appeals. *See id.* at 1075

---

[8] Plaintiff's references to the ALJ's evaluation of the opinions from the State agency consultants at the initial level are immaterial to the evaluation of the opinion of Dr. Kresser. (*See* Pl. Br. at 17.)

("Hoopai reasons that since the ALJ determined that his depression impairment was severe at step two, then it must constitute a significant non-exertional limitation at step five such that the assistance of a vocational expert is required. This argument lacks merit."). In rejecting this argument, the Court of Appeals recognized a distinction between the severity analysis at step two and the analysis at step five:

> Clearly, the severity of the limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two, otherwise the two steps would collapse and a vocational expert would be required in every case in which a step-two determination of severity is made. This would defeat the purpose of the grids because a claimant could not reach the step-five determination without making out a prima facie case of a severe disability at step two.

*Id.* at 1076. It held that "satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." *Id.* Therefore, Plaintiff's limitations are not automatically "sufficiently severe" for purposes of step five simply because the ALJ found he had severe impairments at step two.

Next, Plaintiff recites the rule that "nonexertional impairments, if sufficiently severe, may limit a claimant's functional capacities in ways not contemplated by the grids, in which case the grids would be inapplicable." (*Id.* at 26.) He argues that because the ALJ found only non-exertional limitations the grids are inapplicable to his case. (*Id.* at 27.) However, Plaintiff fails to show that the ALJ's reliance on the grids was inappropriate because he fails to show that his limitations, in fact, significantly limited the range of unskilled work available to him. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Moreover, "the Ninth Circuit has already had that moderate mental limitations do not even require vocational expert testimony."[9] *Trefcer v. Astrue*, No.

---

[9] Here, the ALJ found that Plaintiff had a "moderate" limitation in interacting with others, but no limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; or adapting or managing oneself. (R. at 20–

CIV S-11-1436 GGH, at 7 (E.D. Cal. June 27, 2012) (citing *Hoopai*, 499 F.3d at 1077). Lastly, the ALJ's focus on Plaintiff's ability to perform unskilled work comports with applicable Social Security Rulings ("SSR"). SSR 85-15, in pertinent part, provides that:

> *Where a person's only impairment is mental . . . the final consideration is whether the person can be expected to perform unskilled work*. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.
>
> . . .
>
> *Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work.* These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.

1985 WL 56857, at *4 (1985) (emphasis added). Therefore, the Court finds no error in the ALJ's findings at step five.

    **IT IS THEREFORE ORDRED**, **affirming** the decision of the Commissioner.

    **IT IS FURTHER ORDERED**, directing the Clerk of Court to enter judgment accordingly and terminate this case.

    Dated this 12th day of November, 2020.

                                Honorable John Z. Boyle
                                United States Magistrate Judge

---

21.)